UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 13-301 |
| --- | --- |
| | CIVIL ACTION NO. 16-1562 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| ANDREA LEWIS | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a 28 U.S.C. § 2255 motion to vacate filed by Defendant Andrea Lewis ("Lewis"). [Record Document 94]. Lewis accuses his trial and appellate counsel of providing ineffective assistance by underemphasizing the intent element of his offense. [Record Document 94-1 at 3–10]. Because Lewis has not demonstrated that he received constitutionally deficient representation, the motion to vacate [Record Document 94] is **DENIED**.

I.  Background

Andrea Lewis, a pastor and director of a church choir in Shreveport, Louisiana, was convicted of violating 18 U.S.C. § 2423(a), which criminalizes transporting a minor across state lines with the intent to engage in criminal sexual activity. [Record Document 69 at 1]. As summarized by the Fifth Circuit:

> He had sexual relationships with the three named victims, all of whom were underage members of his choir group during the mid- to late-1990s. He had sex with each of the three girls for the first time when they were approximately fourteen years old, which is below the age of consent under federal, Louisiana, and Texas law. He did not use physical force against the girls to have sex with

1

> them, however. He had intercourse and oral sex with them many times while
> they were underage, and he continued his sexual relationship with two of the
> girls into their twenties.

*United States v. Lewis*, 796 F.3d 543, 544 (5th Cir. 2015). Lewis would take the girls with him when he went to Texas on choir-related business. *Id.* Despite the stated purpose for the trips, the Government contended that the opportunity to have sex also motivated the interstate travel. *Id.* Lewis's defense was that he never had sex with the women while they were underage. *Id.*

At trial, this Court admitted evidence about two additional girls whom Lewis had sexually assaulted. [Record Document 86 at 14]. On appeal, Lewis raised as error only this evidentiary ruling. *Lewis*, 796 F.3d at 545. The Fifth Circuit affirmed, finding that this Court did not abuse its discretion under Rule 403 when balancing the probative value of the similar-crimes evidence against the danger of unfair prejudice. *Id.* at 548. Lewis did not file a petition for a writ of certiorari.

## II. <u>Instant Motion</u>

In this motion, Lewis argues that his trial and appellate counsel were ineffective because they failed in various ways to emphasize that the Government had not carried its burden to prove his intent. [Record Document 94 at 4–6]. Lewis contends that a conviction under 18 U.S.C. § 2423(a) requires the Government to "prove that Lewis's 'dominant motive' for the travel with the minors to Texas was to engage in sexual activity." [Record Document 94-1 at 6]. On the basis of this contention, he raises four ineffective-assistance claims: (1) his appellate counsel failed to challenge the sufficiency of the evidence of his motive; (2) his trial counsel

2

failed to raise the issue of motive as a defense at trial; (3) his trial counsel did not argue for a Rule 29 judgment of acquittal on the basis of motive; (4) his trial counsel failed to object to the absence of a "dominant motive" requirement in the jury charge. [*Id.* at 3–10].[1]

### III. Standard for Granting a § 2255 Motion

A federal prisoner may test the legality of his detention by "mov[ing] the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a); *see United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004) (quoting *Kuhn v. United States*, 432 F.2d 82, 83 (5th Cir. 1970)). Where there has been such a "denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Relief under § 2255 is "reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Kinder v. Purdy*, 222 F.3d 209, 213 (5th Cir. 2000) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)). A district court may deny a § 2255 motion without conducting any type of evidentiary hearing if the defendant fails to "present[] 'independent indicia of the likely merits of [his] allegations.'" *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (quoting *United States v. Cavitt*, 550 F.3d 430, 442 (5th

---

[1] In his motion, Lewis represents that he has three ineffective-assistance-of-counsel claims, [Record Document 94 at 4–6], but as the first claim involves failures of both trial and appellate counsel, [Record Document 94-1 at 3], this Court will analyze it as two separate claims.

3

Cir. 2008)). A hearing is also unnecessary if the issues were raised on direct appeal or do not describe a constitutional violation. *United States v. McCollom*, 664 F.2d 56, 59 (5th Cir. 1981) (citing *Buckelew v. United States*, 575 F.2d 515 (5th Cir. 1978)).

IV. <u>**Law and Analysis**</u>

   A. <u>**Timeliness**</u>

With certain exceptions not relevant here, a § 2255 motion must be made within one year of the date on which the movant's conviction became final. 28 U.S.C. § 2255(f). Following an unsuccessful appeal after which the defendant does not seek a writ of certiorari, a conviction becomes final when the time expires for petitioning for the writ. *Clay v. United States*, 537 U.S. 522, 525 (2003). A petition for a writ of certiorari must be filed within ninety days of the entry of judgment. *Id.* (citing Supreme Court Rule 13(1)). The Fifth Circuit denied Lewis's appeal on August 10, 2015. *Lewis*, 796 F.3d at 543. Thus, his time to petition for certiorari expired on November 8, 2015. Because he filed his § 2255 motion on November 7, 2016, [Record Document 94], his motion is timely.

   B. <u>**Intent Requirement in 18 U.S.C. § 2423(a)**</u>

Congress passed the Mann Act to criminalize transporting individuals across state lines for the "purpose of prostitution or debauchery, or for any other immoral purpose." White-Slave Traffic (Mann) Act, ch. 395, 36 Stat. 825 (1910) (codified as amended at 18 U.S.C. §§ 2421–2424). 18 U.S.C. § 2423(a) extends the Mann Act to provide:

> A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with

> a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2423(a). One of the essential elements of a Mann Act violation is that the "interstate transportation have for its object or be the means of effecting or facilitating the proscribed activities." *Mortensen v. United States*, 322 U.S. 369, 374 (1944) (citing *Hansen v. Haff*, 291 U.S. 559, 563 (1934)).

In *Mortensen v. United States*, the Supreme Court described the *mens rea* of a Mann Act offense as a requirement that the "dominant motive" for the interstate movement be illicit sexual conduct. *Id.* The Mortensens operated a brothel and went on a vacation, taking two of the sex workers with them. *Id.* at 372. Because no sex work occurred during the trip, the Supreme Court concluded that illicit sexual activity played no part in the interstate transportation; rather, "[t]he sole purpose of the journey from beginning to end was to provide innocent recreation and a holiday for petitioners and the two girls." *Id.* at 375. Because weighing the relative importance of multiple motives for travel was not essential to the *Mortensen* Court's holding, the Seventh Circuit has characterized the "dominant motive" language as dicta. *United States v. McGuire*, 627 F.3d 622, 625 (7th Cir. 2010); *cf. United States v. Hoschouer*, 224 F. App'x 923, 926 (11th Cir. 2007) (per curiam) (citing *United States v. Cole*, 262 F.3d 704, 709 (8th Cir. 2001); *United States v. Ellis*, 935 F.2d 385, 391–92 (1st Cir. 1991)) ("But, the plain language of section 2423(a) requires only that the defendant knowingly transport a minor with the 'intent' of engaging in criminal sexual activity. It does not require evidence of any 'purpose' or 'motive' of the interstate travel.").

The Fifth Circuit has interpreted the Supreme Court's language "narrowly" such that travel may have a lawful purpose so long as "an efficient and compelling purpose" of the interstate transportation was illicit. *United States v. Campbell*, 49 F.3d 1079, 1083 (5th Cir. 1995) (quoting *Forrest v. United States*, 363 F.2d 348, 349 (5th Cir. 1966)). Because multiple purposes may coexist, the "'dominant' requirement does not impose a 'but for' limitation on the defendant's intent." *Id.* Instead, a jury may find intent so long as the criminal sexual conduct is not merely "incidental" to the journey. *Id.* (citing *Mortensen*, 322 U.S. at 375; *United States v. Hon*, 306 F.2d 52, 55 (7th Cir. 1962), *disapproved by United States v. Snow*, 507 F.2d 22 (7th Cir. 1974); *Smart v. United States*, 202 F.2d 874, 875 (5th Cir. 1953)). When a defendant has multiple motivations for the interstate travel, the illicit purpose need not be more compelling than the lawful purpose so long as the illicit purpose is, in fact, compelling. *See id.* (rejecting a weighing of various motives as "arithmetic hairsplitting"). Likewise, there is no requirement that the defendant possess the criminal intent prior to crossing state lines. *See United States v. Garcia-Lopez*, 234 F.3d 217, 219 (5th Cir. 2000); *Lewis v. United States*, No. CR 12-00154-CG-N, 2015 WL 7771222, at *11 (S.D. Ala. Oct. 5, 2015), *report and recommendation adopted*, No. 12-00154-CG-N, 2015 WL 7776588 (S.D. Ala. Dec. 2, 2015). It is only required that the intent "be found to exist before the conclusion of the interstate journey." *Mortensen*, 322 U.S. at 374.

In cases where transportation of a minor across state lines has a licit purpose, the Fifth Circuit looks to circumstantial evidence to determine whether illicit conduct was also a "compelling purpose." *Campbell*, 49 F.3d at 1083 (quoting *Forrest*, 363 F.2d at 349). A pattern of grooming behavior "designed to reduce resistance to sexual advances," including isolating

6

a minor from a parent or guardian, is circumstantial evidence of unlawful intent for transportation that follows such conduct. *United States v. Hitt*, 473 F.3d 146, 152 (5th Cir. 2006); *see Campbell*, 49 F.3d at 1083 (finding criminal intent for interstate transportation when a defendant's "act of befriending [the victim] could fairly be called recruitment" into prostitution). The Fifth Circuit has also found that intrastate sexual contact in the minor's home state before or after the interstate journey supports a finding of the requisite intent. *Sealed Appellee v. Sealed Appellant*, 825 F.3d 247, 253 (5th Cir. 2016); *United States v. Bennett*, 258 F. App'x 671, 685 (5th Cir. 2007) ("A jury could rationally infer from the sexual activity that occurred both before and after state lines were crossed, that Bennett transported [the minor] with intent to engage in sexual activity with her."). Finally, a pattern of similar sexual misconduct with other victims allows a jury to infer intent. *Bennett*, 258 F. App'x at 684 (holding that evidence of erotic communications with other minors supported a finding that the intent of transporting the victim was to engage in a sexual relationship); *Hitt*, 473 F.3d at 152 n.4 (holding that evidence that defendants had sexually assaulted another boy using techniques similar to those used on the victim supported the necessary inference). Indeed, when reviewing Lewis's case on direct appeal, the Fifth Circuit noted that "[a] proclivity for having sex with underage girls made it significantly more likely that he transported the named victims across state lines with the intent that they engage in criminal sexual activity . . . ." *Lewis*, 796 F.3d at 547.

C.   **Standard for Ineffective Assistance of Counsel**

A § 2255 motion is an acceptable vehicle through which to raise initial claims of ineffective assistance of trial or appellate counsel. *Massaro v. United States*, 538 U.S. 500, 503–04 (2003). To successfully state an ineffective-assistance-of-counsel claim, a movant must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The movant bears the burden of proof. *See id.* If he fails to establish either prong of the *Strickland* test, then counsel's performance was constitutionally effective. *Id.*; *see also Tucker v. Johnson*, 115 F.3d 276, 280 (5th Cir. 1997) (citing *Strickland*, 466 U.S. at 697).

As to the first deficient-performance prong, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted) (citing *Michel*, 350 U.S. at 101). If a tactical decision is "conscious and informed," it "cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Crane v. Johnson*, 178 F.3d 309, 314 (5th Cir. 1999) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)). "Judicial scrutiny of counsel's performance must be highly deferential," and the court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

To establish prejudice, a § 2255 movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A defendant is not prejudiced if the "ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In addition, a defendant must affirmatively prove the existence of prejudice. *See United States v. Kayode*, 777 F.3d 719, 724–25 (5th Cir. 2014). Self-serving conclusory statements that the outcome would have been different "fall[ ] far short of satisfying *Strickland*'s prejudice element." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) Because both prongs of *Strickland* must be satisfied, a court may reject an ineffective-assistance-of-counsel claim upon an insufficient showing of either deficient performance or prejudice, without inquiry into the other prong. *Strickland*, 466 U.S. at 697.

D. <u>Application</u>

1. **Appellate Counsel's Failure to Raise Sufficiency of the Evidence**

Lewis argues that his appellate counsel was ineffective because he did not challenge the sufficiency of the Government's evidence of Lewis's intent to engage in criminal sexual activity. [Record Document 94-1 at 3]. Although appellate counsel has a duty to raise "[s]olid, meritorious arguments based on directly controlling precedent," an attorney has no obligation

9

to "raise every nonfrivous ground of appeal available." *Dorsey v. Stephens*, 720 F.3d 309, 320 (5th Cir. 2013) (first quoting *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003); then quoting *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998)). Counsel has discretion to select the issues to raise before the reviewing court; judicious selection may "maximize the likelihood of success." *Smith v. Robbins*, 528 U.S. 259, 288 (2000); *cf. Jones v. Barnes*, 463 U.S. 745, 753 (1983) ("The effect of adding weak arguments will be to dilute the force of the stronger ones." (quoting Robert Stern, *Appellate Practice in the United States* 266 (1981 ed.)). Therefore, to successfully assert an ineffective-assistance claim for failure to raise an issue on appeal, a § 2255 movant must show that a "particular nonfrivolous issue was clearly stronger than issues counsel did present." *Smith*, 528 U.S. at 288.

Lewis's appellate counsel challenged only a single ruling by this Court. *Lewis*, 796 F.3d at 545. Under Rule 413 of the Federal Rules of Evidence, a court may admit evidence that a criminal defendant accused of sexual assault committed any other sexual assault. Fed. R. Evid. 413(a). This Court ruled that evidence that Lewis had sexually assaulted two additional girls was admissible and that their testimony did not violate Rule 403. [Record Document 86 at 14]. The thrust of counsel's argument on appeal was that because the misconduct alleged was nonconsensual, the testimony was unfairly prejudicial. *Lewis*, 796 F.3d at 545.

To determine whether Lewis's appellate counsel was ineffective, this Court must determine whether the sufficiency of the evidence of Lewis's intent was a "clearly stronger" basis on which to advocate for vacating his conviction than was the admission of the similar-crimes testimony. *Smith*, 528 U.S. at 288. Because Lewis's trial counsel moved for and renewed

a motion for a judgment of acquittal, the Fifth Circuit would have "review[ed] . . . the sufficiency of the evidence de novo," but from a perspective that would have been "highly deferential to the verdict." *United States v. Bolton*, 908 F.3d 75, 89 (5th Cir. 2018) (quoting *United States v. Scott*, 892 F.3d 791, 796 (5th Cir. 2018)). Evidence suffices to convict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Scott*, 892 F.3d at 797). Given this degree of deference, an attorney could reasonably conclude that concentrating on an evidentiary ruling that placed inflammatory facts before the jury would be more likely to succeed than a direct challenge to the sufficiency of the evidence.

Moreover, even if the similar crimes had been excluded, there was ample evidence from which the jury could conclude that Lewis intended to engage in sexual activity in Texas with the three girls named in the indictment. The intent element of § 2423(a) may be proven by circumstantial evidence. *Hitt*, 473 F.3d at 152. There was general agreement among the prosecution and defense witnesses at trial that Lewis's trips always had a legitimate purpose such as a rehearsal or performance. Nevertheless, all three Jane Does testified to similar grooming behavior, which began with flattery that became progressively more romantic in nature and which concluded with sexual contact. [Record Documents 77 at 51–53, 78 at 234–37, and 80 at 314–19]. They also testified that they had sex with Lewis in Louisiana before doing so in Texas. [Record Documents 77 at 53, 59, 78 at 238, 245, and 80 at 319, 328]. One girl testified that the trips provided an opportunity for Lewis to express affection for her publicly, [Record Document 80 at 362, 373–74], which supports an inference that Lewis took

11

her to Texas to increase his ability to engage in sexual conduct. A second girl indicated that when she and Lewis traveled into Texas, "[t]here was always a reason as to why we went on the trips, or a reason that was a valid reason I could tell my parents. But it was always understood that we may stop somewhere to have sex while we were on this trip." [Record Document 77 at 64]. This testimony reveals that Lewis arranged situations that isolated the girls from their parents—at times via pretextual explanations. From all of this testimony, a rational juror could conclude that the opportunity to have sex with the girls was an "efficient and compelling purpose" for the trips. Given that the Government presented the sort of circumstantial evidence that the Fifth Circuit has found warrants the inference that the interstate transportation was done with the intent to engage in illicit sexual activity, *see, e.g.*, *Hitt*, 473 F.3d at 152, Lewis's appellate counsel was not ineffective for choosing not to pursue this line of argument.

### 2. Trial Counsel's Failure to Argue Motive as a Defense

Lewis argues that his trial attorneys were ineffective because they did not vigorously pursue a defense emphasizing the choir-related purposes of the trips to Texas. [Record Document 94-1 at 3–6, 10]. Counsel's selection of trial tactics is presumed to be the product of a "sound trial strategy." *Strickland*, 466 U.S. at 689 (quoting *Michel*, 350 U.S. at 101). Lewis's primary defense at trial was that he did not have sex with any underage girls. *Lewis*, 796 F.3d at 544. Declining to argue inconsistent defenses does render counsel ineffective. *See United States v. Ahmad*, 62 F.3d 396 (5th Cir. 1995) (unpublished table decision) (citing *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988)). An argument that sex played no part in Lewis's

intentions for the Texas trips is not necessarily inconsistent with a defense that sex never happened at all, but focusing on the narrow question of intent may have suggested to the jury a lack of confidence in Lewis's innocence of all sexual contact with the girls. As such, counsel's decision to concentrate on impugning the girls' credibility on the issue of whether sexual activity occurred while they were underage was not an unreasonable decision.

In addition, Lewis's counsel had a strategy for addressing the intent element. Lewis testified in his own defense after which his attorneys called several witnesses to vouch for his truthfulness. [Record Document 81 at 647, 660, 668[. The Federal Rules of Evidence allow reputation and opinion testimony about a witness' character for truthfulness. Fed. R. Evid. 608(a). However, on direct examination the character for truthfulness may not be established by specific instances unless truthfulness is an essential element of the offense. Fed. R. Evid. 405. During a sidebar to rule on whether defense counsel could ask about specific instances of Lewis's honesty, the following exchange occurred:

> THE COURT: What character trait is an essential element of this charge?
> [COUNSEL]: His truthfulness is one of them and his --
> THE COURT: Truthfulness is not an element of the charge against him.
> [COUNSEL]: Well, establishing truthfulness to get to intent.
> THE COURT: Intent?
> [COUNSEL]: Yes.
> THE COURT: I don't see.
> [COUNSEL]: He said he intended to go sing in other choirs when he crossed state lines. One of the elements the Government has to prove.
> THE COURT: That has nothing to do with his truthfulness.
> [COUNSEL]: It does.
>     . . . .
>     I think it goes to intent, and that's an element.
> THE COURT: All right. That is your opinion, and the Court has ruled.
> [COUNSEL]: I object, for the record.

[Record Document 81 at 631–33]. As this exchange makes clear, Lewis's counsel had adopted a tactic of reinforcing Lewis's honesty such that the jury would believe his testimony that he intended to travel to Texas for choir-related business only. Although the Court refused to allow counsel to proceed as far in this direction as counsel would have liked, counsel had a plan to undermine the Government's case as to the intent element and objected when the Court refused to allow full implementation of that plan. Because Lewis's attorneys recognized the need to address the issue of intent and pursued a strategy to do so, their performance did not fall below reasonable professional standards. Lewis is not entitled to habeas relief on this basis.

### 3. Trial Counsel's Failure to Make a Rule 29 Motion[2]

Lewis argues that his trial attorneys were ineffective for failing to move for a judgment of acquittal on the grounds that the Government had not proven that Lewis's "dominant motive" for traveling to Texas was to have sex with the three girls. [Record Document 94-1 at 6]. Under Rule 29 of the Federal Rules of Criminal Procedure, a defendant may move for a "judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).

Lewis's attorneys made two separate oral motions for a judgment of acquittal, one after the close of the Government's case and another after the close of all evidence. [Record Documents 80 at 395 and 82 at 758–59]. The entire speech addressed to the initial motion

---

[2] In his memorandum in support of his § 2255 motion, Lewis refers to this as a motion for a "directed verdict." [Record Document 94-1 at 6]. The Court interprets this argument as referring to a Rule 29 motion for a judgment of acquittal.

14

was, "I think for the record I need to make the motion for judgment of acquittal." [Record Document 80 at 395]. When renewing the motion, counsel offered no argument beyond noting the need to renew. [Record Document 82 at 758–59]. Thus, the Court interprets Lewis as contending that the failure to highlight the question of his intent constituted ineffective assistance.

Given that the motions were made outside of the jury's presence, it is difficult to understand why Lewis's trial counsel elected to offer no argument. However, this Court need not decide whether the decision to forgo any argument that might have directed this Court to weaknesses in the Government's case was reasonable. In order to prevail, Lewis must show that he was prejudiced by his counsel's failure. *See Strickland*, 466 U.S. at 687. Hence, to obtain habeas relief, Lewis must show that if his attorneys had argued that the Government had not established that sex with the girls was the "dominant motive" for the interstate travel, the Court would probably have granted the motion for a judgment of acquittal.

When evaluating a Rule 29 motion, "the 'relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Valle*, 538 F.3d 341, 344 (5th Cir. 2008) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Hence, when Lewis made his motion, one of the questions this Court had to answer was whether, based on the evidence presented at trial, any rational juror could have concluded that one "efficient and compelling purpose" of the trips to Texas was sex with the girls. *Campbell*, 49 F.3d at 1083 (quoting *Forrest*, 363 F.2d at 349). Folding the Rule 29 standard and the *Strickland*

standard together reveals that in order to demonstrate prejudice, Lewis must now show that if his trial counsel had argued about intent, there is a reasonable probability that this Court would have found that no rational trier of fact could have found that sex with the minors was a compelling purpose of the trips to Texas.

The girls' stories were strikingly similar. Each of them testified to grooming behaviors as well as to sexual contact in both Louisiana and Texas. Under Fifth Circuit precedent such evidence warrants an inference that the purpose of the interstate travel was illicit sexual conduct. *See, e.g., Hitt*, 473 F.3d at 152. As a result, this Court would have been most unlikely to grant the Rule 29 motion even if counsel had made the arguments Lewis now suggests. Therefore, Lewis was not prejudiced by the lack of argument in support of his Rule 29 motion. In the absence of prejudice, his ineffective-assistance-of-counsel claim fails.

4. **Trial Counsel's Failure to Object to the Jury Charge**

Finally, Lewis argues that his trial counsel was ineffective for failing to advocate for a jury charge that "required proof of a 'dominant motive'" and for failing to object to the charge that was ultimately given. [Record Document 94-1 at 7–9]. On the intent element of 18 U.S.C. § 2423(a), the Court charged the jury that the Government must prove that "[t]he defendant intended that the women identified in each count of the indictment would engage in sexual activity with him, which if the sexual activity had occurred, the defendant would have committed the criminal offense of sexual assault under Texas Penal Code § 22.011." [Record Document 58 at 13]. The Court then defined the Texas offense in such a way that if a jury

found that Lewis had had sex with the girls, it would of necessity have also found that he committed that offense. [*Id.* at 13–14].

In support, Lewis directs this Court to *United States v. Garcia-Lopez*. [Record Document 94-1 at 8–9]. In *Garcia-Lopez* the Fifth Circuit approved an instruction that expanded on the intent element: "the 'Government [did] not need to prove that [Garcia-Lopez's] only purpose for traveling in foreign commerce was to engage in a sexual act with a minor,' but that it was 'enough if one of the defendant's motives in traveling in foreign commerce was to engage in a sexual act with a minor.'" 234 F.3d at 219.[3] Nevertheless, in the same opinion the Fifth Circuit found no error in the district court's rejection of an instruction that would have required the Government to prove that illicit sexual activity was a "significant or dominant purpose of the travel." *Id.* at 219–20.

While the addition of some statement explaining in more detail that illicit sexual activity had to be one purpose of the travel may have increased the clarity of the jury instructions, the instructions as written were a correct statement of the law. *See United States v. Richardson*, 676 F.3d 491, 506 (5th Cir. 2012) ("We review a district court's jury instructions for abuse of discretion, considering 'whether the instruction, taken as a whole is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual

---

[3] Garcia-Lopez was tried under 18 U.S.C. § 2423(b), which criminalizes travel (as opposed to transportation) in interstate or foreign commerce in order to engage in criminal sexual conduct. *Garcia-Lopez*, 234 F.3d at 218. Although the precise wording of the intent element of § 2423(b) differs slightly from that used in § 2423(a), the Fifth Circuit has not attributed significance to those differences. *See, e.g., Bennett*, 258 F. App'x at 679 (a § 2423(a) that cites *Garcia-Lopez*); *Garcia-Lopez*, 234 F.3d at 220 (citing caselaw interpreting an earlier version of § 2423(a)).

issues confronting them.'" (quoting *United States v. Freeman*, 434 F.3d 369, 377 (5th Cir. 2005)). These instructions did not, as Lewis would have it, allow him to be convicted without proof of intent beyond a reasonable doubt. [Record Document 94-1 at 7]. Rather, they specifically required the jury to consider whether the Government had proven that Lewis "intended" to have sex with the girls in violation of Texas law. [Record Document 58 at 13]. Because the Fifth Circuit does not have a pattern instruction for 18 U.S.C. § 2423(a), the Court's instructions were drawn verbatim from the Seventh Circuit's pattern instructions, which track similar formulations in the Eighth and Eleventh Circuits. [Record Documents 44 at 2–4 and 58 at 13].[4] None of these pattern instructions require the Government to prove a "dominant motive" for the travel. Given the Fifth Circuit's apparent rejection of "significant or dominant purpose" language, *Garcia-Lopez*, 234 F.3d at 219–20, this Court would have been unlikely to give such an instruction had counsel requested it. The Court thus concludes that Lewis's counsel's decision not to challenge the jury charge was reasonable.

Even if the Court were to find that trial counsel was unreasonable for failing to object to a jury charge that did not contain "dominant motive" language, Lewis must still show

---

[4] Comm. on Fed. Criminal Jury Instructions of the Seventh Circuit, *Pattern Criminal Jury Instructions of the Seventh Circuit* 591 (2012 ed., rev. 2017) (requiring proof that "the defendant intended that [the victim] engage in sexual activity which if it had occurred [the defendant] . . . would have committed the criminal offense of _____."); Comm. on Pattern Jury Instructions of the Judicial Council of the Eleventh Circuit, *Eleventh Circuit Pattern Jury Instructions, Criminal Cases* § O93.1 (2016 ed., rev. 2019) (requiring proof that "at the time of the transportation, Defendant intended that [the victim] would engage in prostitution or other unlawful sexual activity"); Judicial Comm. on Model Jury Instructions for the Eighth Circuit, *Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit* 617 (2017 ed.) (requiring proof "that the defendant transported [the victim] with the intent such person engage in" criminal sexual activity).

prejudice. That is, he must demonstrate that, had the jury been charged as he suggests, the jury would probably have voted to acquit. *See Strickland*, 466 U.S. at 694. Given the similarity of the facts of Lewis's case to those of other dual-motive cases in which the Fifth Circuit found that the evidence was sufficient to convict, *see, e.g.*, *Bennett*, 258 F. App'x at 684–85; *Hitt*, 473 F.3d at 152; *Campbell*, 49 F.3d at 1083–84, this Court finds that additional instructions regarding motive would have been unlikely to alter the jury's verdict. As a result, Lewis's motion fails.

V.    <u>**Conclusion**</u>

Because neither Lewis's trial counsel nor his appellate counsel were ineffective, Lewis's motion to vacate [Record Document 94] is **DENIED**. Because Lewis's claim is plainly refuted by the record, no evidentiary hearing is required.

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. Unless a circuit justice or a circuit or district judge issues a certificate of appealability, an appeal may not be taken to the court of appeal. In this case, a certificate of appealability is **DENIED** because Lewis has failed to demonstrate a substantial showing of the denial of a constitutional right.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this ___ day of _____, 2019.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE